# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

MORGAN A. TAYLOR, on behalf of    \*
herself and all others similarly    \*
situated,    \*

     Plaintiff,    \*     Case No. 1:17-cv-00599-AT

   \*

v.    \*

   \*

PROFESSIONAL PLACEMENT    \*
SERVICES, LLC and KOHL'S    \*
DEPARTMENT STORES, INC.,    \*

     Defendants.    \*

   \*

## PLAINTIFF'S UNOPPOSED MOTION FOR
## <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

## <u>TABLE OF CONTENTS</u>

**Page**

Introduction .................................................................................................1

Structure of the Settlement..........................................................................2

Claims Administration .................................................................................3

Response of the Class ..................................................................................5

Argument.....................................................................................................6

  I.  The Settlement Meets All Requirements for Final Approval ........................6

      A.    The Class Representative and Class Counsel have adequately represented the Classes.........................................................................8

      B.    The Settlement was negotiated at arm's-length by vigorous advocates, and there has been no fraud or collusion............................................10

      C.    The Settlement provides substantial relief for the Class....................12

          1.    Diverse and substantial legal and factual risks weigh in favor of settlement ...............................................................12

          2.    The monetary terms of the Settlement fall favorably within the range of prior TCPA class action settlements .........14

      D.    The overwhelmingly positive reaction to the Settlement supports final approval .......................................................................17

      E.    The proposed attorneys' fees are fair and reasonable. ........................18

  II.  The distribution of notice was consistent with due process requirements...................................................................................20

Conclusion ................................................................................................22

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*ACA Int'l v. FCC*,
    885 F.3d 687 (D.C. Cir. 2018).............................................................................15

*Arthur v. SLM Corp*,
    No. C10–0198 JLR, Docket No. 249 (W.D. Wash. Aug. 8, 2012).......................7

*Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002) .........................................................................9

*Bayat v. Bank of the West*,
    No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ..................6

*Brotherton v. Cleveland*,
    141 F. Supp. 894 (S.D. Ohio 2001)...................................................................19

*Charvat v. Allstate Corp.*,
    29 F. Supp. 3d 1147 (N.D. Ill. 2014)..................................................................14

*Chun-Hoon v. McKee Foods Corp.*,
    716 F. Supp. 2d 848 (N.D. Cal. 2010)................................................................18

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977)............................................................................10

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) .................................................................................12

*Espejo v. Santander Consumer USA, Inc.*,
    No. 11-8987, 2019 WL 2450492 (N.D. Ill. June 12, 2019) .................................15

*Garcia v. Gordon Trucking, Inc.*,
    No. 1:10-CV-0324, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) ......................18

*Grannan v. Alliant Law Grp., P.C.*,
No. C10-02803 HRL, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012) .....................7

*Hall v. Frederick J. Hanna & Assocs., P.C.*,
No. 15-3948, 2016 WL 2866081 (N.D. Ga. May 10, 2016) .................................8

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..........................................................................16

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................19

*In re Capital One TCPA Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) ...................................................................10

*In re Checking Account Overdraft Litig.*,
275 F.R.D. 654 (S.D. Fla. 2011) ...................................................................9, 11

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993) ...................................................... 10, 13, 16, 17

*In re U.S. Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992) .............................................................................9

*Johnson v. Brennan*,
No. 10-4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011)...............................12

*Juris v. Inamed Corp.*,
685 F.3d 1294 (11th Cir. 2012) ........................................................................22

*Kirkpatrick v. J.C. Bradford & Co.*,
827 F.2d 718 (11th Cir. 1987) ..........................................................................10

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015) ....................................................................7, 10

*Lopez v. Hayes Robertson Grp., Inc.*,
No. 13-10004, 2015 WL 5726940 (S.D. Fla. Sept. 29, 2015) ............................21

*Marks v. Crunch San Diego, LLC*,
904 F.3d 1041 (9th Cir. 2018) ..........................................................................15

*McCrary v. Elations Co.*,
    No. 13-0242, 2015 WL 12746707 (C.D. Cal. Aug. 31, 2015)..............................22

*Melanie K. v. Horton*,
    No. 14-710, 2015 WL 1799808 (N.D. Ga. Apr. 15, 2015) ...................................7

*Michel v. WM Healthcare Solutions, Inc.*,
    No. 1:10-CV-638, 2014 WL 497031 (S.D. Ohio Feb. 7, 2014)............................7

*Milliron v. T-Mobile USA, Inc.*,
    No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) ...................................12

*Muransky v. Godiva Chocolatier, Inc.*,
    922 F.3d 1175 (11th Cir. 2019) .......................................................................20

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)......................................................................19

*Palm Beach Golf Center-Boca, Inc. v. Sarris*,
    311 F.R.D. 688 (S.D. Fla. 2015) .......................................................................16

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007)...............................................................18

*Pinkus v. Sirius XM Radio, Inc.*,
    319 F. Supp. 3d 927 (N.D. Ill. 2018).................................................................15

*Ressler v. Jacobson*,
    822 F. Supp. 1551 (M.D. Fla. 1992) .................................................................13

*Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d
    907 (W.D. Mich. 2018) ....................................................................................14

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
    No. 08-482, 2010 WL 2486346 (C.D. Cal. June 15, 2010) .................................12

*Schwyhart v. AmSher Collection Servs., Inc., No. 15-1175,*
    *2017 WL 1034201 (N.D. Ala. Mar. 16, 2017)*....................................................20

*Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*,
    279 F.R.D. 442 (N.D. Ohio 2012).....................................................................17

*St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc*,
   No. 12-174, 2013 WL 6498245 (E.D. Mo. Dec. 11, 2013) .................................17

*Swift v. Direct Buy, Inc.*,
   No. 2:11-cv-401-TLS, 2013 WL 5770633 (N.D. Ind. Oct. 24, 2013) ..................5

*Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.,*
   *No. 15-2673, 2018 WL 4539287 (N.D. Ohio Sept. 21, 2018)* ............................20

*Wilkins v. HSBC Bank Nevada, N.A.*,
   No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) .......................................6

*Wilson v. Everbank*,
   No. 14-22264, 2016 WL 457011 (S.D. Fla. Feb. 3, 2016)....................................12

*Wreyford v. Citizens for Transp. Mobility, Inc., No.*
   *12-2524, 2014 WL 11860700 (N.D. Ga. Oct. 16, 2014)* .....................................20

## Other Authorities

Fed. Judicial Ctr., Judges' Class Action Notice &
   Claims Process Checklist & Plain Language Guide (2010)...................................4

Manual for Complex Litig. § 21.633  ........................................................................8

McLaughlin on Class Actions (8th ed. 2011).........................................................11

*Newberg on Class Actions*
   § 11:50 ..............................................................................................................8, 15

## INTRODUCTION

After arm's-length negotiations, and with the assistance of an experienced and well-respected private mediator, Hon. Arlander Keys (Ret.) of JAMS in Chicago, Plaintiff Morgan A. Taylor and Defendant Professional Placement Services, LLC ("PPS") agreed to a $1.7 million class settlement of Plaintiff's claims in this case, alleging that PPS caused nonconsensual calls to be placed to the cell phone numbers of herself and others using an automatic telephone dialing system ("ATDS" or "autodialer") or an artificial or prerecorded voice, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

Pursuant to the Court-approved notice plan, direct individual notice of the Settlement was disseminated to the Settlement Class, supplemented with internet notice via a Google Ads, targeted Facebook and Instagram ads, and an interactive settlement website. The reaction of the Class to this Settlement has been overwhelmingly positive: Zero objections have been filed, and zero Class Members have opted out.  The approximately 668 valid claimants are expected to receive individual settlement distributions of approximately $1,500 each. And following notice under CAFA to each state attorney general's office, no state attorney general, nor the Attorney General of the United States, has objected.

The Settlement is an excellent result for the Class, particularly in view of the

1

risks and delays involved in continued litigation and the recovery per claimant. Considering the overwhelmingly favorable support for the Settlement from the Class Members, Plaintiff  respectfully requests that the Court finally approve the Settlement, approve Plaintiff's motion for attorneys' fees, expenses, and an incentive award (moved for separately) in its entirety, and enter a final judgment and order dismissing this case.

## STRUCTURE OF THE SETTLEMENT

The Settlement provides relief to the following Class of persons:

> The persons to whom a voicemail message was successfully transmitted to such person's cellular telephone voicemail by Professional Placement Services, LLC through use of VoApps, where there was a coding change from "C to B" as to the cellular telephone number, where any such successful transmission was made between November 18, 2012 through and including May 30, 2018, limited to subscribers or regular users of the telephone numbers on the Class List during that period.

Dkt. 59-3, Agr. ¶ 11.7; *see also* Dkt. 64, Preliminary Approval Order at 3.  The Class List consists of a list of 19,134 unique cellular telephone numbers identified as meeting the Class definition criteria. Dkt. 59-3, Agr. ¶ 11.10. Per to the reverse-lookup process contemplated under the Agreement, Dkt. 59-3, Agr. ¶ 13.3, using the Class List, the Settlement Administrator was able to identify 16,081 records with a postal address that could be sent notice. *See* Exhibit A, KCC Decl. ¶ 3.

The Settlement Benefits will be allocated as follows: First, not later than ten

2

business days following Final Approval, PPS shall pay any funds remaining due under the Agreement, including as to awarded attorneys' fees, expenses, and any incentive award, and the amounts remaining for distribution to Claim Eligible Members of the Class. Dkt. 59-3, Agr. ¶¶ 14.5-14.6, 16.2. Next, no later than sixty days after the Final Approval Date, the Settlement Administrator will mail Claim Eligible Members an IRS Form W-9 request for their taxpayer identification number, followed (within ninety days thereafter) with a Benefit Check on a *pro rata* basis, anticipated to exceed $600, assuming the Court grants fees/expenses and the incentive award as requested. Dkt. 59-3, Agr. ¶¶ 16.4.[1] Finally, amounts remaining in the settlement fund after the initial round of distribution will be redistributed to those claimants who cashed their initial checks, to the extent administratively feasible; otherwise, such funds will be distributed to a Court-approved *cy pres* recipient. Dkt. 59-3, Agr. ¶¶ 13.13 (proposing National Consumer Law Center), 17.

---

[1]     The Agreement provides that, should the amount of per-Class Member Settlement Benefits be less than $600, the Settlement Administrator will simply mail the Benefit Check no later than sixty days after the Final Approval Date. Dkt. 59-3, Agr. ¶ 16.3. Given the high amount of per-Class Member Settlement Benefits expected based on the claims rate, the IRS Form W-9 process will be needed for backup withholding purposes.

## CLAIMS ADMINISTRATION

On March 5, 2019, this Court granted preliminary approval to the Settlement. Dkt. 64. After a bidding process to ensure that settlement administration would be accomplished in a cost-effective manner, the Parties retained Kurtzman Carson Consultants LLC ("KCC") as Settlement Administrator to implement a comprehensive notice plan for Class Members. *See* Dkt. 64, Order at 4-5 (approving KCC and ordering notice to Class Members).

Pursuant to this notice plan, KCC mailed 16,081 postcard notices in the form approved by the Court. Exhibit A, KCC Decl. ¶ 6. Of these, a total of 2,844 notices were returned by the U.S. Postal Service. *Id.* ¶ 8. KCC ran a search for an updated address for Class Members whose postcard notice was returned as undeliverable, and updated and re-mailed the postcard to 443 Class Members. *Id.* As a result, at least approximately 71.5% of mailed notices have, as best as the parties can determine, reached Class Members,[2] with approximately 85% of mail notices for Class Members for whom an address was identified being successfully delivered.[3] This alone meets established due process requirements for class notice, even outside of the supplemental internet notice. *See* Fed. Judicial Ctr., Judges' Class

---

[2] 13,680 successful mailed notices ÷ 19,134 numbers on the Class List = 71.495%
[3] 13,680 successful mailed notices ÷ 16,081 postcards mailed = 85.069%

Action Notice & Claims Process Checklist & Plain Language Guide (2010), *available at* https://goo.gl/KTo1gB (instructing that notice should have an effective "reach" to its target audience of between 70-95%); *see also Swift v. Direct Buy, Inc.*, No. 2:11-cv-401-TLS, 2013 WL 5770633, at *3 (N.D. Ind. Oct. 24, 2013) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class."). In accordance with the notice plan, notice was also posted on the Internet through advertisements through Google, Facebook and Instagram, providing for a total of more than four million impressions. *See* Exhibit A, KCC Decl. ¶ 7.

In addition to the direct mailed notice, KCC also established a website, www.ppstcpasettlement.com, by which Class Members could view settlement documents and make claims. *Id.* ¶ 4. KCC established a toll-free telephone number through which Class Members could receive additional information about the settlement. *Id.* ¶ 5. KCC also provided notice to relevant governmental entities pursuant to the Class Action Fairness Act ("CAFA"). *Id.* ¶ 2. No government entities have voiced any disagreement with any aspect of the settlement. *Id.* ¶ 2.

Because settlement is limited to phone numbers that are on the Class List, claimants were required to submit the telephone number on which they received calls that are the subject of the settlement. Several thousand claimants submitted

claims with phone numbers that were not on the Class List. KCC mailed deficiency email and snail mail letters to 1,544 claimants, generating 56 claims. KCC Decl. ¶ 12. KCC has yet to send an additional 2,346 deficiency communications to claimants whose claims were later-received.

## <u>RESPONSE OF THE CLASS</u>

Pursuant to the Court's Preliminary Approval Order, Class Members had until July 15, 2019, to submit a claim under the Settlement. Dkt. 64, at ¶ 22. As of the date of this motion, KCC has received 4,434 timely and 137 late claims, of which it has validated 668 telephone numbers claimed. <u>Exhibit A</u>, KCC Decl. ¶ 11. The first round of deficiency communications generated 56 claims, and there are approximately 2,346 deficiency letters that must still go out, which the parties hope will generate more valid claims.

Even without the valid claims that may be generated through the second round of deficiency letters, the response rate is approximately 3.5%, which falls in line with claims rates in other consumer class action settlements. *See Bayat v. Bank of the West,* No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement, and 1.1% for injunctive relief portion of settlement); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ("3.16% of the class[]

filed a timely claim"); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving TCPA class action settlement with 2.5% claims rate); *Michel v. WM Healthcare Solutions, Inc.,* No. 1:10-CV-638, 2014 WL 497031, at *4 (S.D. Ohio Feb. 7, 2014) ("a total response rate of 3.6%"); *Arthur v. SLM Corp.,* No. C10–0198 JLR, Docket No. 249 at 2–3 (W.D. Wash. Aug. 8, 2012) (claims rate of approximately 2%); *Grannan v. Alliant Law Grp.*, P.C., No. C10-02803 HRL, 2012 WL 216522, at *3 (N.D. Cal. Jan. 24, 2012) (claims rate under 3%). While Class Counsel wishes the claim rate had been higher, they submit that the notice plan in this case was very thorough, and was the best practicable plan under the circumstances.

That hundreds of Class Members approved the benefits provided by Settlement enough to submit a claim, with not a single objection or opt-out, represents a positive response from the class of persons who stand to benefit. Thus, for this reason and as further detailed below, the Settlement should be approved.

## **ARGUMENT**

## I.    **The Settlement Meets All Requirements for Final Approval.**

"Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is 'fair, reasonable, and adequate.'" *Melanie K. v. Horton*, No. 14-710, 2015 WL 1799808, at *2 (N.D. Ga. Apr. 15,

2015) (quoting Fed. R. Civ. P. 23(e)(2)). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  Newberg on Class Actions, § 11:50.

Rule 23 – and particularly the portions thereof dealing with settlement – was amended in December 2018. The first step in the amended process is a preliminary fairness determination, which the Court conducted in March 2019.  *See* Dkt. 64. After class notice, the second step in the process is a final fairness hearing. Fed. R. Civ. P. 23(e)(2) (2018); *also* Manual for Complex Litigation, § 21.633-34; *Hall v. Frederick J. Hanna & Assocs., P.C.*, No. 15-3948, 2016 WL 2866081 (N.D. Ga. May 10, 2016).  Where, as here, the proposed settlement would bind absent class members who are not formal parties to the case, it may only be approved after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

### A.    The Class Representative and Class Counsel have adequately represented the Class.

"There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *accord In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."). In that light, courts should consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1348 (S.D.Fla. 2011) (internal quotations omitted); *see also* Fed. R. Civ. P. 23(e)(2)(A) (identifying whether "the class representatives and class counsel have adequately represented the class" to be a relevant factor).

Here, the Settlement was achieved after the exchange of pertinent discovery, a production from PPS' call vendor VoApps identifying the extent and nature of its calling to the Class, pre-mediation statements outlining the Parties' respective positions, a formal mediation with a retired federal magistrate judge, and weeks of back-and-forth between counsel for the Parties thereafter to finalize the

9

Agreement. <u>Exhibit B</u>, Burke Decl. ¶ 13. Plaintiff was thus fully apprised of the facts, risks, and obstacles involved with continued litigation, and did everything possible to get the best possible result for Class Members—achieving a Settlement exceeding the vast majority of TCPA class settlements, in providing an expected per-Class Member Settlement Benefit of approximately $1,500. *Compare, e.g., Kolinek*, 311 F.R.D. at 494 ($30/claimant); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) ($34.60/claimant).

In addition, a plaintiff and counsel are adequate if "counsel are qualified, experienced, and generally able to conduct the proposed litigation," and the "plaintiff[] [does not] have interests antagonistic to those of the rest of the class." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). "In a case where experienced counsel represent the class, the Court absent fraud, collusion, or the like, should hesitate to substitute its own judgment for that of counsel." *Ingram*, 200 F.R.D. at 691 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.").

Here, Plaintiff's claims are aligned with the claims of the other Class Members. She thus had every incentive to vigorously pursue the claims of the

Class, as she has done by remaining actively involved in this matter since its inception, participating in discovery, and remaining involved in the settlement process. Exhibit B, Burke Decl. ¶ 14. In addition, Plaintiff retained the services of law firms with extensive experience in litigating consumer class actions, and TCPA actions in particular. *Id.* ¶¶ 3-12; Dkt. 65-2, Holcombe Decl. ¶¶ 4-27.

Here, Plaintiff and her counsel believe that the Settlement is fair, reasonable, and adequate, and in the best interests of the Class. Dkt. 59-3, Agr. ¶ 9; Exhibit B, Burke Decl. ¶ 15. Class Counsel also believe that the benefits of the Parties' Settlement far outweigh the delay and considerable risk of proceeding to a contested class certification and trial. *Id.* Because Plaintiff and Class Counsel have adequately represented the Class, this factor supports approval.

## B. The Settlement was negotiated at arm's-length by vigorous advocates, and there has been no fraud or collusion.

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011); *see also* Fed. R. Civ. P. 23(e)(2)(B) (providing that whether "the proposal was negotiated at arm's length" is a relevant factor in the approval determination); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) ("The Court finds that the Settlement was reached in the absence of collusion, is the product of informed, good-faith, arm's-length negotiations

11

between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator[.]").[4]

Here, the Settlement Agreement resulted from good faith, arms'-length settlement negotiations over many months, including an in-person mediation session before the Honorable Arlander Keys (Ret.), at JAMS Chicago. Exhibit B, Burke Decl. ¶ 13. Plaintiff and PPS submitted detailed mediation submissions to Judge Keys and to one another setting forth their respective views as to the strengths of their cases. *Id.* Accordingly, the parties negotiated their settlement at arm's-length, and absent any fraud or collusion. *See Wilson v. Everbank*, No. 14-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (finding no evidence of fraud or collusion where the settlement was negotiated at arms' length, and where the mediation was overseen by a nationally renowned mediator).

### C.    The Settlement provides substantial relief for the Class.

---

[4] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

The Settlement in this matter is fair, reasonable, and adequate, as demonstrated by the overwhelmingly positive response of Class Members.

### 1.   Diverse and substantial legal and factual risks weigh in favor of settlement.

The Court must also consider "the likelihood and extent of any recovery from the defendants absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i) (identifying "the costs, risks, and delay of trial and appeal" as relevant to approval determination); *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992) ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise.").

With this in mind, while Plaintiff strongly believes in her claims, she understands that PPS asserts a number of potentially case-dispositive defenses. For example, PPS disputes that Plaintiff would be able to successfully certify the class she defines in her complaint on a litigation basis, contending that a litigation class is unascertainable and that individual issues predominate, including based on a disagreement over the significance of its internal coding of consent and wrong numbers. Indeed, PPS contends that it had consent to call some or all of the class members, based on the purportedly disparate ways its clients obtained the phone

13

numbers called, and asserts that this would preclude a finding of predominance in the non-settlement context.[5] PPS also contests that it used an "automatic telephone dialing system," or that the VoApps "direct-to-voicemail" messages it sent constitute "calls" to cell phones under the TCPA, *see* Dkt. 38 at p. 4 (8th Defense)—a position targeting Plaintiff's and the Class' ability to obtain *any* relief.

Indeed, a defense that Plaintiff understands PPS would raise is an argument that the VoApps system it used to contact consumers was not covered by the TCPA. Plaintiff's counsel here won that issue a few weeks after the mediation in this case. *Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907 (W.D. Mich. 2018). And while *Saunders* is not controlling here, and was decided after-the-fact, the work performed and information gleaned in the *Saunders* case assisted with mediating this case.

Plaintiff disputes every one of PPS' defenses. But it is obvious that her likelihood of success at trial is far from certain. Indeed, the law applicable to the TCPA itself has seen some radical changes in recent years with, for example, the D.C. Circuit undoing binding regulatory authority from the FCC just last year concerning what constitutes an "automatic telephone dialing system" under the

---

[5]    Consent is a defense to a TCPA claim, for which the defense has the burden of proof. *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1149 (N.D. Ill. 2014).

statute. *ACA Int'l v. FCC*, 885 F.3d 687, 695 & 706 (D.C. Cir. 2018). Courts are still dealing with the aftermath of the *ACA Int'l* decision, and some have interpreted *ACA Int'l* to effectively preclude much of what has traditionally been considered an ATDS in the industry and under longstanding precedent. *See Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 939 (N.D. Ill. 2018) (adopting restrictive Third Circuit interpretation of what constitutes an ATDS); *but see Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018) (rejecting restrictive ATDS interpretation by the Third Circuit post-*ACA Int'l*); *Espejo v. Santander Consumer USA, Inc.*, No. 11-8987, 2019 WL 2450492, at *8 (N.D. Ill. June 12, 2019) (citing *Marks* in finding dialer constitutes ATDS).

Accordingly, Plaintiff's decision to settle her claims, and the claims of the members of the Class, is reasonable. *See Bennett*, 96 F.R.D. at 349-50 (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for the plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

### 2. The monetary terms of the Settlement fall favorably within the range of prior TCPA class action settlements.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50. This is, in part, because

"[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 319 ("In assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.") (internal citation omitted).

The Settlement provides Class Members with real monetary relief that, at slightly over $1,500, amounts to ***more than*** the $1,500-trebled-per-violation base statutory damages available under the TCPA, *see* 47 U.S.C. § 227(b)(3). The exceptional value to the Class is further supported by the fact that this expected individual recovery is *in addition to* payment of attorneys' fees and other costs, despite the TCPA's lack of statutory fee shifting. *Id.* Further, many courts have deemed the TCPA's statutory damages too small to incentivize a significant number of individual actions, meaning Class Members can obtain this substantial benefit despite the fact that, absent settlement, the vast majority of them would not otherwise obtain *any* redress for the alleged violations at issue. *See, e.g., Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the

likelihood that class members will bring suit); *St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that class members have an interest in individually controlling the prosecution of separate actions); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) (stating that, since each class member is unlikely to recover more than a small amount, they are unlikely to bring individual suits under the TCPA). The approximately $1,500 in per-Class Member Settlement Benefits expected here thus represents real monetary relief to Class Members as compensation for receiving the calls at issue.

The parties' Settlement, therefore, is well within "a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in a particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 323; *see also id.* at 326 (A court "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation."). Indeed, "it has been held proper to take the bird in the hand

17

instead of a prospective flock in the bush." *Id.* (internal citation omitted). Each Class Member here had an equal opportunity to claim in for their *pro rata* share of Settlement Benefits, and the absence of objections or opt-outs thus further support the equitable nature of the Settlement amongst the Class.[6]

### D. The overwhelmingly positive reaction to the settlement supports final approval.

As a result of the notice that KCC distributed, 668 Class Members claims have been validated, and not a single Class Member objected to or requested exclusion from the Settlement. *See* Exhibit A, KCC Decl. ¶¶ 9-11. This overwhelmingly favorable reaction to the Settlement supports its final approval. *See Garcia v. Gordon Trucking, Inc.*, No. 1:10- CV-0324 AWI SKO, 2012 WL 5364575, at *6 (E.D. Cal. Oct. 31, 2012) ("The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The reaction of class members to the proposed settlement, or perhaps more accurately the absence of a negative reaction, strongly supports settlement."); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("A low

---

[6]     *See* Fed. R. Civ. P. 23(e)(2)(D) (identifying whether "the proposal treats class members equitably relative to each other" as a relevant factor to approval).

percentage of objections demonstrates the reasonableness of a settlement."); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *Brotherton v. Cleveland*, 141 F. Supp. 894, 906 (S.D. Ohio 2001) ("[A] relatively small number of class members who object is an indication of a settlement's fairness."); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

Here, there were not "few" objections to the settlement—there were <u>no</u> objections. This reaction to the Settlement by the Class supports approval.

### E.    The proposed attorneys' fees are fair and reasonable.

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed Settlement is adequate. Fed. R. Civ. P. 23(e)(2)(C)(iii). Though discussed in greater detail in Plaintiff's Motion for Attorneys' Fees, Expenses, and Incentive Award, Dkt. 65, Class Counsel's request for fees in the amount of one-third of the Settlement Benefits, or $566,666.66, plus costs, falls in line with other

TCPA class settlements in the Eleventh Circuit and elsewhere, and is thus reasonable.[7] This is particularly the case given the contingent nature of Class Counsel's work on behalf of the Class, the risks faced given the novel aspects of this action (including, for example, based on PPS' use of a VoApps "direct-to-voicemail" platform it contends does not constitute an autodialer under the TCPA), and the terrific result achieved, affording Claim Eligible Members about $1,500 each. *See Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1194 (11th Cir. 2019) (affirming award of 33% of class settlement fund in attorneys' fees).

Under the Parties' Agreement, Class Counsel will not be paid any awarded fees until at least ten days after final approval is granted and the earlier of either (i) thirty-five days after Judgment is entered or (ii) the date all appeals are exhausted and such Judgment is upheld. Dkt. 59-3, Agr. ¶¶ 11.16.3, 14.5. The Claim Deadline closed on July 15, 2019, Dkt. 64, Order at 11, and the Court thus can make its decision as to final approval and fees with a sufficient expectation of how the fees will affect the amount of per-Class Member Settlement Benefits. This is

---

[7]    *E.g., Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*, No. 15-2673, 2018 WL 4539287, at *4 (N.D. Ohio Sept. 21, 2018) (fees of one-third of fund in TCPA case); *Wreyford v. Citizens for Transp. Mobility, Inc.*, No. 12-2524, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014) (same); *Schwyhart v. AmSher Collection Servs., Inc.*, No. 15-1175, 2017 WL 1034201, at *3 (N.D. Ala. Mar. 16, 2017) (finding one-third in fees "fair and reasonable").

thus not one of those settlements with a post-final approval claims deadline that leaves the amounts each claimant might receive entirely open-ended:[8] The Settlement Administrator knows the number of timely claims received, which permits the Parties to represent with certainty that, if the Court grants fees, costs, and the incentive award as requested, each Claim Eligible Member will receive approximately $1,500.[9] The reasonableness and timing of Class Counsel's requested fees thus further support approval.

## II.     The distribution of notice was consistent with due process requirements.

"Rule 23 requires that notice to class members be the 'best notice practicable under the circumstances[.]'" *Lopez v. Hayes Robertson Grp., Inc.*, No. 13-10004-CIV-MARTINEZ, 2015 WL 5726940, at *6 (S.D. Fla. Sept. 29, 2015); *see also* Fed. R. Civ. P. 23(e)(2)(C)(ii) (identifying "the effectiveness of any proposed

---

[8]     *See* Fed. R. Civ. P. 23 Notes ("Settlement regimes that provide for future payments, for example, may not result in significant actual payments to class members…. In some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known.").

[9]     The Settlement Administrator is still waiting for a response to deficiency letters sent to 2,346 claimants whose claims were postmarked as timely, but that were received after the Claim Deadline. Exhibit A, KCC Decl. ¶ 12. Yet, even if all of these claims are corrected and ultimate deemed valid, the amount in expected per-Class Member Settlement Benefits is still expected to be approximately $1,500. *E.g.,* [$1,700,000 fund - $93,661 admin. - $566,666.66 fees - $ 7,777.61 costs - $15,000 incentive award] ÷ [668 validated claims + 2,346 deficient claims] = $1,532.77.

method of distributing relief to the class, including the method of processing class-member claims" as a relevant factor to approval).  However, "due process does not require that class members actually receive notice." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) (collecting cases).

Here, direct mail notice was successfully delivered to 85% of all persons for whom records were available, further bolstered by general and targeted internet notice. Exhibit A, KCC Decl. ¶¶ 6, 8.  The notice program thus far exceeds the minimum due process requirements.  Further, the claims process was straightforward and accessible: Claims could be submitted by simply returning the postage-prepaid form on the postcard notice, Dkt. 62-1 at 1, mailing in the one-page Claim Form accessible from KCC or the Settlement Website, Dkt. 59-3 at 33, or by submitting one's claim electronically through the Settlement Website itself. Dkt. 59-3, Agr. ¶ 11.11. The effectiveness of the notice program is also evident by the claims rate falling within typical parameters for consumer class actions[10]—in addition to the fact that not a single Class Member objected or opted out.  As such, notice satisfied due process, and the Settlement should be approved.

---

[10]    *E.g., McCrary v. Elations Co.*, No. 13-0242, 2015 WL 12746707, at *9 (C.D. Cal. Aug. 31, 2015) ("[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent.") (citation omitted).

## <u>CONCLUSION</u>

Plaintiff respectfully submits that the Settlement in this matter is an excellent result for the Class, and the exceptional response from Class Members suggests that they agree.  For this and the foregoing reasons, Plaintiff respectfully requests that the Court approve the Settlement and enter a final judgment and order, in the form attached hereto as <u>Exhibit C</u>.

Dated: August 15, 2019          Respectfully submitted,

MORGAN A. TAYLOR, on behalf of
herself and all others similarly situated

By:   _/s/ Justin T. Holcombe_____
BURKE LAW OFFICES, LLC
Alexander H. Burke (*pro hac vice*)
Email: aburke@burkelawllc.com
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288

SKAAR & FEAGLE, LLP
Justin T. Holcombe (Ga. Bar No. 552100)
Email: jholcombe@skaarandfeagle.com
133 Mirramont Lake Drive
Woodstock, GA 30189
Telephone: (770) 427-5600

*Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1.C & 7.1.D

Pursuant to L.R. 7.1.D, I certify that this document has been prepared with 14-point, Times New Roman font, approved by the Court in L.R. 5.1.C.

_/s/  Justin T. Holcombe_____

## CERTIFICATE OF SERVICE

I hereby certify that on this day, August 15, 2019, I caused the foregoing PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

_/s/ Justin T. Holcombe_____